UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHAPEL PARK VILLA, LTD.,

|                        |              |
|------------------------|--------------|

Plaintiff,

**DECISION
and
ORDER**

v.

**02-CV-407F**

THE TRAVELERS INSURANCE COMPANY, INC.

**(consent)**

Defendant.

_____

APPEARANCES:          DAVIS, AUGELLO, MATTELIANO & GERSTEN, LLP
                      Attorneys for Plaintiff
                      JOSEPH A. MATTELIANO, of Counsel
                      17 Court Street
                      Suite 200
                      Buffalo, New York 14202

                      KENNEY, SHELTON, LIPTAK & NOWAK, LLP
                      Attorneys for Defendant
                      JUDITH TREGER SHELTON and
                      TIMOTHY E. DELAHUNT, of Counsel
                      Suite 510, Rand Building
                      14 Lafayette Square
                      Buffalo, New York 14203

**JURISDICTION**

    The parties to this action consented to proceed before the undersigned on

October 27, 2003.  (Docket Item No. 8).  The matter is presently before the court on

Defendant's motion for partial summary judgment, filed January 18, 2005 (Docket Item

No. 14) ("Defendant's Motion").

**BACKGROUND**

Plaintiff, Chapel Park Villa, Ltd. ("Plaintiff"), commenced this action in New York Supreme Court, Erie County, seeking a declaratory judgment requiring Defendant Travelers Insurance Company ("Defendant") to defend and indemnify Plaintiff with regard to a personal injury claim asserted against it.  On June 3, 2002, Defendant removed the action to this court based on diversity jurisdiction.

On January 18, 2005, Defendant filed the instant motion seeking summary judgment on Plaintiff's declaratory judgment action, along with Defendant's Memorandum of Law in Support of Travelers Indemnity Company's Motion for Partial Summary Judgment (Docket Item No. 14") ("Defendant's Memorandum"), the Affidavit of Judith Treger Shelton, Esq. in Support of Traveler's Motion for Partial Summary Judgment  ("Shelton Affidavit"), Defendant's Statement of Undisputed Material Facts ("Defendant's Undisputed Facts Statement") and attached exhibits ("Defendant's Exh(s) ___").  In opposition, Plaintiff on February 25, 2005, filed the Affidavit of Joseph A. Matteliano, Esq. (Docket Item No. 19) ("Matteliano Affidavit") together with a Memorandum of Law in opposition to Defendant's motion ("Plaintiff's Memorandum"). Defendant filed, on March 11, 2005, a Reply Memorandum of Law in Support of Defendant's Motion (Docket Item No. 20) ("Defendant's Reply Memorandum"), and the Affidavit of Timothy E. Delahunt, Esq. (Docket Item No. 21) ("Delahunt Affidavit").  Oral argument was deemed unnecessary.  Based on the following, Defendant's motion is GRANTED.

# FACTS [1]

On June 26, 1997, Plaintiff leased property known as Chapel Wood Hall at 7008 Erie Road in Derby, New York, to Mark S. Lukich ("Lukich"), pursuant to a written lease agreement, for the purpose of operating a restaurant and banquet facility for a five year term, beginning August 1, 1997.  Defendant's Exh. 22 at 3; Defendant's Memorandum at 4.  On August 1, 1998, Lukich allegedly sustained personal injuries from an accident involving a fall that occurred on Plaintiff's property, the leased premises.  Defendant's Exh. 22 at 2; Defendant's Memorandum at 3.  Specifically, Lukich contends that, as a result of Plaintiff's failure to maintain a safe workplace and provide him with proper "tools and instrumentalities," Lukich fell from a ladder, sustaining personal injuries Defendant's Exh. A at 2.  Lukich commenced this action  on June 29, 2001 against Plaintiff in New York Supreme Court Defendant's Exh. N.  It is undisputed that Defendant issued two insurance policies which are the subject of this action, a general liability policy ("the liability policy"), Defendant's Exh. 22 at 2-3; Defendant's Exh. Z (Doc. No. 17), and a "Commercial Excess Liability" policy ("the umbrella policy"), Defendant's Exh. 22 at 2-3; Defendant's Exh. AA (Doc. No. 16).  Both policies were effective for a one-year period, from August 1, 1998 through August 1, 1999. Defendant's Exh. 22 at 2-3; Defendant's Memorandum at 16-18.

As relevant, Section IV of the liability policy states

2.      Duties In The Event of Occurrence, Claim or Suit
    a.      You [Plaintiff] must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

---

[1] Taken from the pleadings and papers filed in the instant action.

(1)     How, when and where the "occurrence or offense took place;
(2)     The names and addresses of any injured persons and
        witnesses; and
(3)     The nature and location of any injury or damage arising out
        of the "occurrence" or offense.

*       *       *

e.      Notice given by or on behalf of the insured, or written notice by or
        on behalf of the injured person or any other claimant, to any agent
        of ours in New York State, with particulars sufficient to identify the
        insured, shall be considered notice to us.

Defendant's Exh. 22 at 2.

Section IV(5) of the umbrella policy similarly requires:

a.      You [Plaintiff] must see to it that we are given prompt written notice of any
        "occurrence" or "offense" which may result in damages payable by this
        policy.  Notice should include:
        (1)     How, when and where the "occurrence" or "offense" took place;
        (2)     The names and addresses of any injured persons and witnesses;
                and

*       *       *

e.      Notice given by or for an insured, or written notice by or for the injured
        person or any other claimant, to any of our licensed agents, with
        particulars sufficient to identify you, is deemed to be notice to us.

Defendant's Exh. 22 at 2.

Defendant contends Plaintiff complied with neither of these policy conditions, and

therefore denied coverage.  Defendant's Memorandum at 16-23.  Specifically,

Defendant maintains that Plaintiff had immediate knowledge of the accident but failed to

timely notify its agent, Patrick Comerford, or Defendant, of the potential claim.  *Id.* at 11,

13-14, 23.  In support of this contention, Defendant relies, in part, on a memorandum

dated August 24, 1998 between Plaintiff and its attorney, William Crowe, to demonstrate

Plaintiff had actual notice of the accident in August 1998.  Defendant's Exh. B.  The

4

relevant  portion of the memorandum states "[n]ote, late last month or the beginning of this month [August 1998] co-owner Mark had fallen off a ladder several feet in the air (installing a light) and broke his back." *Id.*

In opposition to Defendant's motion, Plaintiff argues it gave timely notice of the accident to Defendant, as required by its policies with Defendant.  Plaintiff's Memorandum at 22-28.  Deborah Prough ("Prough"), who was employed at the time of the accident as Plaintiff's office manager, testified at deposition that she believed that Plaintiff contacted Patrick Comerford ("Comerford"), an independent insurance broker with McManus-Peard-Gesl Agency ("McManus"), to report the accident within a week of learning of it.  Defendant's Exh. Q. at 14.   Prough maintains she is "sure" that she and/or Salvatore Calandra ("Calandra"), then-owner of Plaintiff, had telephoned Comerford to notify him of the accident because that was standard procedure when an accident took place on the premises.  *Id.*  However, Prough testified she had no specific recollection of making the phone call to Comerford about the accident.  *Id.* at 15. Prough recalled Comerford coming into the office to speak with Calandra about the accident, however, Prough was not in the room when the conversation between Calandra and Comerford took place*. Id.*  No record corroborates that Prough called Comerford to report the August 1, 1998 accident nor is there documentation substantiating a subsequent meeting which allegedly took place between Calandra and Comerford concerning the accident.  Defendant's Exh. Q. at 10-11, 16, 18.  Prough also testified that Plaintiff never received confirmation that their claim had been reported. Defendant's Exh. Q. at 18.  Plaintiff admits it possesses no documents to substantiate Prough's belief that Prough called Comerford to inform him of Lukich's accident.

5

Defendant's Exh. 22 at 8.

Calandra knew of the accident on the day it occurred, and knew sometime in August 1998 that Lukich's broken back was allegedly caused by the accident. Defendant's Exh. 22 at 8. However, Calandra did not report the accident to Comerford or Defendant. *Id.* At his deposition on October 5, 2004, Calandra testified he first learned of the accident from Prough, and also from his maintenance supervisor, Guy Lepsch. Defendant's Exh. S. at 8-10. Calandra further testified that, upon learning of the accident, he instructed Prough to call Comerford to notify Plaintiff's insurance agent of the accident and he was "sure" that Prough called Comerford, however, Calandra could not say with certainty whether, in fact, Prough did. Defendant's Exh. 22 at 8; Defendant's Exh. S at 9-10. At his deposition, Calandra admitted he also learned of the accident from his maintenance man, Guy Lepsch, within a day or two after its occurrence but was not informed if Lukich had been injured, and did not inquire. Defendant's Exh. S. at 8, 10, 13. Before Lukich commenced his personal injury action against Plaintiff, Calandra testified he was not aware Lukich was injured from the fall. Defendant's Exh. S. at 13. Calandra testified that, had he received a letter from Lukich or a representative of Lukich stating Lukich was injured as a result of the fall, he would have been sufficiently informed that reports of Lukich's accident were more than hearsay. *Id.* at 14-15. Calandra did not believe he had a duty to investigate. *Id.* at 15.

Plaintiff also argues it gave notice to Defendant of the accident on February 10, 1999, when Plaintiff forwarded to Defendant, in connection with an unrelated litigation by Plaintiff against Lukich, Plaintiff's motion to strike with a request that Defendant

protect Plaintiff's interests.[2]  Plaintiff's Memorandum at 5, 23-28 (citing Defendant's Exh.

G).  Attached as exhibits to this communication were Lukich's "Answer to Summons"

and the "Summons/Complaint Counter-Claim" in that action.  *Id.*  The Answer to

Summons included three references to "Defendant's Serious Accident at the Leased

Premises on August 1, 1998," but did not further elaborate the facts surrounding the

accident. [3] Defendant's Memorandum at 21 (citing Exh. D at 1, 3).  Further, there is no

reference in the Answer to Summons to what Lukich's alleged injury was, how it was

sustained, "if a third-party was possibly at fault," or the facts surrounding the accident.

Defendant's Memorandum at 5, 22.

Although Defendant acknowledges it received these documents, Defendant

maintains it was not properly notified of the accident until more than three years after its

occurrence, with the filing of Lukich's complaint for personal injuries against Plaintiff in

September 2001.  Defendant's Memorandum at 2.  As noted, Lukich served Plaintiff on

September 14, 2001 with a Summons and Notice concerning the August 1, 1998

accident.  Defendant's Exh. 22 at 6; Defendant's Exh. N.  Particularly, on September 21,

2001, Plaintiff forwarded these papers to Comerford, who then forwarded them to

Defendant on September 21, 2001.  Defendant's Exh. 22 at 6; Defendant's Exhs. W at

---

[2] The unrelated lawsuit concerned Lukich's alleged breach of his lease agreement with Plaintiff.

[3] The references in Lukich's Answer to Summons are (1) "Since the Defendant's [Lukich] Serious Accident at the Leased Premise on August 1, 1998, there followed a series of incidents . . ."  Defendant's Memorandum at 21 (citing Ex. D at 1); (2) "On August 12th, 1998, Items pertaining to the Defendant's Injuries from the Accident on August 1st, 1998 at the Leased Premise was secretively removed from the Leased Premise by the Plaintiff's Maintenance Staff." *Id.* (citing Ex. D. at 1); and (3) "Prior to the Defendants Serious Accident in the Leased Premise at Chapel Park Villa, The Defendant had noticed unexplainable high Utility bills and therefore expressed a concern to the Plaintiff and his Staff." *Id.* (citing Ex. D at 3).

17; O.  Defendant disclaimed coverage on October 12, 2001 based on Plaintiff's failure

to provide Defendant with timely notice of the August 1, 1998 accident.  Defendant's

Exh. P.

According to Comerford, he was first notified of the August 1, 1998 accident in

September 2001, "when Chapel Park forwarded Lukich's personal injury suit papers to

Comerford's agency."  Defendant's Exh. 22 at 9.  Comerford denied meeting with

Calandra to discuss the accident, stating that in cases where clients wished to meet

with him to discuss potential claims, Comerford as a matter of policy referred them to

his agency's commercial Customer Service Representative ("CSR").  Defendant's Exhs.

W at 11-12, 20-22; X.  The CSR would take the claim report, then forward the report to

the client's respective courier.  Defendant's Exh. W. at 12-13.  According to Comerford,

this procedure occurs even when there was only the possibility of a claim.  *Id.* at 13.

Although Comerford testified he did not meet with clients, including Plaintiff, to

discuss actual or potential claims, he would meet with clients to discuss renewal of their

policy or to change client coverage.  Defendant's Exh. W at 10-11.  Comerford could not

recall meeting with Calandra in July, August or September of 1998, but acknowledged if

such meeting had taken place, it was limited to renewal of Plaintiff's insurance policies.

*Id.* at 13-14.  Comerford denied discussing Lukich's accident with Calandra at any time

and, although Comerford recalled that Plaintiff in January 1999 forwarded papers to

McManus regarding an unrelated Lukich lawsuit against Plaintiff, Comerford maintains

that the August 1998 accident was never reported to McManus.  Defendant's Exhs. W

at 14-15, 23, 27-28, 34; X.  McManus's claim file for Plaintiff contained no loss reports

regarding Lukich's accident on August 1, 1998.  Defendant's Exh. X.  According to

Comerford, had Plaintiff contacted McManus to report the accident, a loss report would have been generated.  Defendant's Exh. W. at 35.

## DISCUSSION

**1.      Privileged Correspondence Between Plaintiff and Its Attorney**

Plaintiff contends that a memorandum from Deborah Prough to William Crowe, then counsel for Plaintiff, regarding the August 1, 1998 accident is privileged material that cannot be used as evidence in support of Defendant's motion.  Defendant's Exh. B; Plaintiff's Memorandum at 27-28.  It is undisputed that Defendant received the memorandum in connection with Plaintiff's unrelated claim against Lukich for unpaid rent and Lukich's counterclaims.  As stated, *supra,* at 6, the portion of the memorandum which demonstrates Plaintiff had actual notice of the accident reads "note, late last month or the beginning of this month co-owner Mark had fallen off a ladder several feet in the air (installing a light) and broke his back." *Id.*  Defendant argues the memorandum is not privileged material because (i) the record does not demonstrate the disclosure was inadvertent; (ii) Plaintiff knew of the memorandum at Calandra's deposition on October 5, 2004, yet counsel did not allege inadvertent disclosure of or demand for the document until February 25, 2005; (iii) Defendant would be prejudiced if it was now precluded from relying on the memorandum; and (iv) "if the memorandum was ever privileged, its materiality is beyond dispute" and Plaintiff should have disclosed the memorandum's existence in a "privilege log" pursuant to New York Civil Practice Law and Rules § 3122(b) (McKinney 2004).  Further, Defendant asserts that Plaintiff

waived the privilege by disclosing the letter and by not timely notifying Defendant of an alleged inadvertent disclosure.  Defendant's Reply Memorandum at 1-2.

In a diversity case, New York law governs the existence of the privilege, Fed.R.Evid. 501 (where state law provides the rule of decision, state law determines the existence of a privilege), as well as the issue of whether a privilege has been waived. *See Filz v. Mayo Found.*, 136 F.R.D. 165, 167-68 (D. Minn. 1991).  Under New York law, "Disclosure of a privileged document generally waives th[e] privilege unless the client intended to retain the confidentiality of the printed document and took reasonable steps to prevent its disclosure."  *Baliva, et al v. State Farm Mut. Auto. Ins. Co.,* 713 N.Y.S.2d 376 (4th Dep't. 2000).  The burden is on the party claiming a communication is privileged to demonstrate it "took reasonable steps to prevent" any inadvertent disclosure, tried to remedy such disclosure immediately, and that the opposing party will not be unduly prejudiced by protective order.  *See AFA Protective Sys., Inc. v. City of New York,* 788 N.Y.S.2d 128, 129-30 (2d Dep't. 2004).

Here, the memorandum reveals that it primarily discusses Lukich's delinquent rental payments.  As the memorandum is addressed to William Crowe, counsel for Plaintiff during the lease litigation between Lukich and Plaintiff, and not Plaintiff's current attorneys, Defendant's Reply Memorandum at 3, it is likely, as Defendant  suggests, that William Crowe, Plaintiff's attorney, provided the memorandum to Defendant "in connection with the prior, unrelated lease litigation."  Defendant's Reply Memorandum at 2.  In support of this assertion, Defendant states the memorandum "was located in Defendant's claim file" in connection with the lease litigation.  *Id.*  Plaintiff does not dispute this explanation, but maintains it remains uncertain as to exactly how Defendant

10

came to possess the memorandum, and that it is nevertheless inadmissible based on the attorney-client privilege.  Plaintiff's Memorandum at 28.  Based on the record, the court finds that the memorandum was disclosed by Plaintiff's attorney in the lease litigation that preceded the current lawsuit between Lukich and Plaintiff.  As such, the disclosure was voluntary, not inadvertent.

Additionally, it is Plaintiff's burden to establish that the privilege has not been waived and that Defendant will not be prejudiced if the memorandum is found to be privileged.  See *Hydraflow, Inc. v. Enidine Inc.,* 145 F.R.D. 626, 637 (W.D.N.Y. 1993) (citing *In re Horowitz,* 482 F.2d 72, 82 (2d Cir. 1973) ("as with all privileges, the person claiming the attorney-client privilege has the burden of establishing all essential elements"), *cert. denied,* 414 U.S. 867 (1973)).  As the record demonstrates, Plaintiff has failed to meet this burden.

Nor has Plaintiff identified the memorandum in a privilege log, as required.  *Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 594 (W.D.N.Y. 1996).  Finally, prohibiting Defendant from relying on the memorandum would, at this point in the litigation, likely unduly prejudice Defendant.  *AFA Protective Systems, Inc.*, *supra*, at 130.

Based on the foregoing, the court finds Plaintiff's claim of privilege to be without merit and the memorandum is admissible in support of Defendant's motion.

## 2.     Summary Judgment

Defendant has moved for partial summary judgment, contending it is not required to defend or indemnify Plaintiff in Lukich's personal injury action because Plaintiff failed

11

to notify Defendant of the accident according to the requirements of its policies.

Defendant's Memorandum at 1.   Conversely, Plaintiff maintains it complied with

Defendant's policy requirements, providing Defendant with timely notice by (i)

forwarding it a copy of Lukich's "Answer to Summons" in February, 1999, Plaintiff's

Memorandum at 15, 23-25; (ii) calling and meeting with Comerford in August, 1998, to

orally report the accident, *id.* at 15; and (iii) forwarding to Defendant the Summons and

Complaint in *Lukich v. Chapel Park,* an unrelated lawsuit*,* as soon as Plaintiff received

it. *Id.*

Summary judgment of a claim or defense will be granted when a moving party

demonstrates that there are no genuine issues as to any material fact and that a moving

party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a) and (b); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The party moving for

summary judgment bears the burden of establishing the nonexistence of any genuine

issue of material fact.  If there is any evidence in the record based upon any source

from which a reasonable inference in the nonmoving party's favor may be drawn, a

moving party cannot obtain a summary judgment.  *Celotex, supra*, at 322.

Summary judgment shall be granted "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits . . . show that there is

no issue as to any material fact, and the moving party is entitled to a judgment as a

matter of law."  Fed.R.Civ.P. 56(c).  "[T]he mere existence of some alleged factual

dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no genuine issue of material fact."

*Anderson, supra*, at 247-48.  Where there are genuine issues of material fact, however, "the trial court's task . . . is limited to discerning [them], not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Serv. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). However, "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."  *Id.* at 1224 (citing *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir. 1998)).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' Such a motion, whether or not accompanied by affidavits, will be 'made and supported as provided in this rule [FRCP 56],' and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, *supra*, at 323-24 (quoting Fed.R.Civ.P. 56).  Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the non-moving party's case."  *Nora Beverages, Inc. v. Perrier Group of America, Inc.,* 164 F.3d 736, 742 (2d Cir. 1998), *remanded to* 1999 WL 958608 (D.Conn. 1999), *motion denied,* 1999 WL 33236190 (D.Conn. 1999), *aff'd,* 269 F.3d 114 (2d Cir. 2001).  Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary

13

judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir. 1995). In opposing a motion for summary judgment a party "may not simply rely on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Goenega, supra*, at 18 (citing cases).

Generally, "credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)). However, where a plaintiff's testimony was "largely unsubstantiated by any other direct evidence" and "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in his complaint," the court may grant a defendant's motion for summary judgment. *Jeffreys v. City of New York,* 426 F.3d 549, 551 (2d Cir. 2005) (internal quotation omitted). As the court in *Jeffreys* stated

> While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare instance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether "the jury could reasonably find for the plaintiff" . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of plaintiff's account.

*Jeffreys,* 426 F.3d at 554 (internal citation omitted).

In such a case, "the moving party still must meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor." *Jeffreys, supra,* at 554 (citing

14

*Fischl, supra,* at 56).  Against this guidance, the court assesses the record on the instant motion.

## A.    Calandra's Conversations with Comerford

Calandra maintains that he spoke with his insurance agent, Comerford, by phone and in person about the accident in August of 1998 and, it was Comerford's duty to notify the appropriate carrier, thereby placing Defendant on notice of the accident. Defendant's Exh. S. at 8, 11-13, 15.  However, Calandra is unaware whether Comerford did, in fact, notify Defendant of the accident.  *Id.* at 15-16, 30.  Comerford also admitted in his deposition that he does not recall meeting with Calandra to discuss Lukich's accident, and Comerford's agency has no documentation maintained in the regular course of business suggesting otherwise.  Defendant's Exh. 22 at 9.  Initially, the court finds Calandra's statements regarding his immediate knowledge of the accident and its consequent injuries to Lukich incredible because they are patently  contradictory.  For example, as stated, Facts, *supra,* at 6, Calandra, at his deposition, admitted he learned from his maintenance man, Guy Lepsch, within days of the accident that Lukich allegedly fell, however Calandra also denied he had knowledge that Lukich was injured as a result of the accident.  *Id.* at 8, 10, 13.  Further, in a statement signed August 2, 2001**,** Calandra admits he knew of the accident on the day it happened and was aware in August 1998, that Lukich allegedly broke his back.  Defendant's Exh. T at 2. Calandra also acknowledged in the signed statement that, in May 2000, he saw Lukich walking with a cane.  *Id.*  Further, Calandra called Lukich's girlfriend, Karen Mackert, several times to find out if Lukich was injured, Defendant's Exh. S. at 24-26, but stated

Mackert did not provide any information to him.  *Id.*  However, a letter written by Prough

on September 18, 1998 referred to Calandra's concerns for Lukich's well-being.

Defendant's Exh. V.  Calandra nevertheless contends that prior to the current lawsuit,

which was initiated on September 14, 2001 with service of a Summons and Notice on

Plaintiff, Calandra was unaware that Lukich sustained injuries from the fall because he

received information from third parties, such as Prough and Lepsch, regarding the

accident, and considered such information to be "hearsay." [4]  Defendant's Exhs. M., N.,

O., S. at 13.  Although Calandra admits he knew Lukich's Answer to Summons was

forwarded to Defendant by Prough or Plaintiff's attorney, Crowe, Calandra could not

provide any basis for such knowledge.  Defendant's Exh. S at 21.  Finally, the letter

from Plaintiff to its attorney, William Crowe in 1998 which Plaintiff maintains is privileged

but which the court determined, *infra,* at 11, is not protected by attorney-client privilege,

demonstrates that Plaintiff had actual notice of the accident in August 1998.

Defendant's Exh. B.  The pertinent portion of the memorandum states "Note, late last

month or the beginning of this month co-owner Mark had fallen off a ladder several feet

in the air (installing a light) and broke his back."  *Id.*

Just as Calandra's statements are not credible because they contradict

themselves, they are not supported by any other evidence of record.  Any statements

made by Prough which may, at first, appear to corroborate statements made by

---

[4] In a letter to Salvatore Calandra on October 12, 2001, Defendant refused to cover Plaintiff in the underlying personal injury action based on Plaintiff's failure to provide proper notice.  Defendant's  Exh. P.  Specifically, Defendant's letter states "Our investigation shows that you were aware of this incident within a few days of when it occurred and that neither you nor the plaintiff nor anyone else complied with the above policy conditions . . . ."  *Id.*

Calandra are either contradicted elsewhere in the record by Prough herself, or evince Prough's uncertainty that events as she recollects them actually transpired that as she now claims.  Insofar as Plaintiff's position, as testified to by Prough and Calandra, is characterized by significant inconsistent and contradictory accounts of when Plaintiff actually learned of Lukich's accident and injuries and when and how Comerford or Defendant was first notified by Plaintiff, and such accounts are unsubstantiated by any other direct evidence in the record, the court believes no reasonable juror could find the allegations in the complaint credible or that Plaintiff sustained its burden to establish it had satisfied the notice requirements of the policies.  *Jeffreys,* 426 F.3d at 551.

In addition to Plaintiff's conflicting testimony, Comerford claims the August 1, 1998 accident was never reported to McManus, Defendant's Exh. W at 15, and further denies meeting with Calandra to discuss the accident.  *Id.* at 14-15.  Comerford testified at his deposition that, had he received such a call from Plaintiff regarding the alleged accident, he would have immediately referred the caller to the C.R.S., who would notify the appropriate carrier.  Defendant's Exhs. W at 11-12, 20-22; X.  Comerford also testified he would not typically meet with clients to discuss potential claims, and there is no report in Defendant's files, as there was when Plaintiff reported the earlier, unrelated litigation between Plaintiff and Lukich to Defendant, that Plaintiff ever notified Defendant of the accident.  Defendant's Exhs. W. at 11, 22; X; Defendant's Memorandum at 17. Finally, although Prough admitted that typically, once an incident was reported, she would document the reported accident, perhaps in a log or incident report, and forward it to Plaintiff's insurance agent, Defendant's Exh. Q at 10-11, she did not recall doing so

17

in this case, and there was no incident report in Plaintiff's files reflecting that Plaintiff notified Comerford or Defendant of the incident.  Defendant's Exh. Q. at 10-11, 16, 18. Further, although Prough testified she was "sure" that Calandra and Comerford met to discuss the August 1, 1998 accident, Prough was not present when the alleged conversation between Comerford and Calandra took place, Defendant's Exh. Q at 15, nor can she specifically recall contacting Comerford to notify him of the incident.  *Id.* at 14-15.   As such, the court finds that the only admissible evidence to support Plaintiff, Calandra's contention that he met with or called Comerford to report the August 1, 1998 accident, is so lacking in credibility that "there is no genuine issue of material fact" and therefore "no rational jury could find in favor of the nonmoving party."  *Gallo, supra,* at 1224.  As the insured, Plaintiff has the burden to establish the required notice to Defendant was given.  *Green Door Realty Corp. v. TIG Ins. Co.*, 329 F.3d 282, 287 (2d Cir. 2003).

### B.    Lukich's Answer to Summons

Assuming, *arguendo,* that Plaintiff provided some form of notice to Defendant of the August 1, 1998 accident when it forwarded Lukich's Answer to Summons in the unrelated action as an exhibit to its Motion to Strike to Defendant on February 10, 1999, requesting that Defendant protect Plaintiff's interests, Plaintiff, nevertheless, failed to provide notice as required by the pertinent portions of its insurance policy, which have been identified above.  Defendant's Exh. G.  Specifically, the liability policy requires that notice include "[h]ow, when and where the "occurrence" or offense took place" and "the nature and location of any injury or damage arising out of the "occurrence" or offense.

Defendant's Exh. 22 at 2.  Here, the three references to the August 1, 1998 accident contained in the Answer to Summons did not identify how, when and where the accident occurred or the injuries Lukich sustained as a result of the accident.  Thus, Plaintiff's argument that notice was provided to Defendant when Plaintiff forwarded the Answer to Summons in the unrelated litigation is without merit.

Plaintiff also contends it did not have notice of the accident until it received Lukich's Answer to Summons, filed in the Erie County Clerk's office on January 8, 1999, in which Lukich made three references, as noted, *supra,* at 7, n.3, to the accident. Plaintiff's Memorandum at 23.  Before that, "[Plaintiff] only had unsubstantiated reports that came to them 3rd or 4th hand."  *Id.,* Defendant's Exh. D.  Plaintiff contends that

> As the testimony of Calandra and Prough above show, they did not even know if an accident really occurred, as there [sic] only information came from Lukich, to Mackert to Lepsch to Prough to Calandra.  Further they had no way of finding out the "how when and where" it occurrred or anything about the alleged injury as both Mackert and Lukich were dodging them and refusing them any information whatsoever due to an ongoing rent dispute.

*Id.*

As such, Plaintiff maintains it provided notice to Defendant as soon as "reasonably possible" by forwarding the Answer to Summons to Defendant.  *Id.*  Plaintiff further contends it provided notice of the accident "to the extent possible" caused by "Lukich and Mackert's stonewalling of [Plaintiff] of any information regarding the occurrence." *Id.* at 24.

Initially, the court finds Plaintiff's contention that it was unable to substantiate the injury or the facts surrounding the injury irrelevant to their duty to notify their carrier. The issue is not whether Plaintiffs could substantiate the accident, but Plaintiff's

awareness of information giving rise to the possibility of such a claim.  *Olin Corp. v. Ins. Co. of North America,* 966 F.2d 718, 723 (2d Cir. 1992) (quoting *Commercial Union Ins. Co. v. Int'l Flavors and Fragrances, Inc.,* 822 F.2d 267, 272 (2d Cir. 1987) ("*Commercial Union*") (if insured knew of circumstances indicating a potential claim, insured obligated to notify carrier).  The record is replete with evidence that Calandra and Prough were aware, within days of the accident, if not immediately thereafter, that Lukich allegedly injured his back while attempting to install a light fixture on the leased premises.  Even if Plaintiff did not know the extent of Lukich's injury, whether he was, in fact, injured, or whether he planned to sue Plaintiff, it is unreasonable to contend that Calandra and Prough could not anticipate a potential claim of liability given that the accident apparently occurred on Plaintiff's property.  In its discussion of Calandra's alleged conversations with Comerford, Discussion, *supra,* at 15-17, the court identified numerous facts that show Plaintiff had immediate knowledge of the accident and the alleged injuries caused by the accident.  However, even if Calandra was not directly notified by Lukich or Lukich's representative that Lukich was in fact injured from the fall, as Calandra contends he needed to determine Lukich sustained injuries from the fall, the record establishes that Calandra heard, through "hearsay" or rumor, of Lukich's injury.  Defendant's Exhs. M, N, O, S at 13.  The Second Circuit has determined rumors are sufficient to put an insured on notice of potential liability, *Green Door Realty Corp. v. TIG Ins. Co.,* 329 F.3d 282, 287-88 (2d Cir. 2003) ("Green Door"), and as such, Calandra should have notified his carrier or Comerford of the potential injuries at that time.

In *Green Door*, *supra*, a landlord, who learned of a fire in his building, "later heard

rumors that a certain unnamed fireman had been injured in the fire." *Green Door*, *supra*, at 287-88. The landlord reported this information to his insurance broker, then sent the broker a letter requesting that he report this to the landlord's carrier, which the broker did not do. *Id.* at 288.  Two months later, a newspaper article describing the fire and the landlord's possible liability was published, at which time the landlord forwarded the article to his broker who again failed to notify the landlord's carrier.  Nineteen months after the fire, the fireman served the landlord and the landlord forwarded these papers to the carrier. *Id.*  The court determined this was late notice, stating the newspaper article "should have cause[d] a reasonable and prudent person to investigate the circumstances, ascertain the facts, and evaluate his potential liability." *Id*. (internal quotation omitted and citing *Security Mut. Ins. Co. of N.Y. v. Acker-Fitzsimons Corp.,* 293 N.E.2d 76, 79 (1972)).  "[A]n otherwise unreasonable delay of 19 months in giving notice may not be excused or explained on the basis of 'lack of knowledge' or 'belief of nonliability.'" *Id.* (internal citation omitted and citing *Security Mut. Ins. Co.*, *supra*, at 80).

The insured may be excused from failing to provide timely notice to its carrier where, in good-faith, the insured believes "an incident does not trigger coverage under its insurance policy." *Green Door*, *supra*, at 287.  However, "the insured's belief must be reasonable under all the circumstances, and it may be relevant on the issue of reasonableness, whether and to what extent, the insured has inquired into the circumstances surrounding the accident or occurrence." *Id.*  Reasonableness is generally a fact to be determined by the jury, but "a delay may be unreasonable as a matter of law when either no excuse is advanced or the proferred excuse is meritless."

*Id.* (citing *Olin Corp.*, *supra*, at 724)).

As stated, the court finds Calandra's assertion that he was not aware of the August 1, 1998 accident until Plaintiff received the Answer to Summons in February of 1999 not credible.  Specifically, Calandra testified that he learned from Prough and Lepsch that Lukich fell within a few days of the accident, Defendant's Exh. S at 6, and advised Prough to notify Comerford of the alleged incident.  *Id.* at 10.  Calandra further contends he spoke with Comerford about the alleged accident on the phone and in person, but maintains he did not know if Lukich was actually injured as a result of the accident because the information he received was based on "hearsay."  Defendant's Exh. S at 8-16.  Further, although Calandra asserts he was stonewalled by Karen Mackert when he attempted to learn whether Lukich was injured and the severity of his injuries, Defendant's Exh. S at 25-26, Calandra apparently knew something of Lukich's injuries as reflected in a letter from Deborah Prough to Mark Lukich and Karen Mackert, dated September 17, 1998**.**  Defendant's Exh. V.  The last paragraph of that letter reads

> Secondly and on a more pleasant note, I spoke with Sam and he is <u>concerned with how you are doing</u> and if you plan to stay with us.  He mentioned that if you ever want out of your lease he is willing to work with you so that no one gets hurt but you have to talk with us.

Defendant's Exh. V (underlining added).

This language demonstrates that Calandra was aware of Lukich's injury, requiring him to investigate the circumstances surrounding the accident.  *See Green Door Realty Corp., supra,* at 287.  If Mackert refused to inform Calandra of Lukich's injuries when Calandra called to inquire about Lukich's health and injury, it would have

22

been reasonable for Calandra to pursue other sources of information including discussing the matter with Lukich.

Given that rumor of injuries allegedly sustained on an insured's property are sufficient to require notice to the insured's carrier, and the undisputed testimony of Prough and Calandra that they knew within a week of the accident's occurrence of rumors of an accident involving Lukich on Plaintiff's property, the court finds no merit in Plaintiff's argument that the February 10, 1999 correspondence with Defendant with which Plaintiff forwarded Defendant the Answer to Summons gave notice "as soon as practicable."

Although reasonableness of delay and notice are questions for the jury "where mitigating circumstances such as absence from the State or lack of knowledge of the occurrence or its seriousness are offered as an excuse . . . absent an excuse or mitigating circumstances, courts have assumed the function of determining fulfillment of the condition."  *Deso v. London & Lancaster Indem. Co.,* 143 N.E.2d 889, 890 (N.Y. 1957) (citing *Rushing v. Commercial Cas. Ins. Co.*, 167 N.E. 450, 451 (N.Y. 1929)).  As the court has determined based on the credible evidence that Calandra and Prough knew, within a week of the accident, of the alleged accident and consequent injuries to Lukich on Plaintiff's property, Plaintiff's failure to provide notice of Lukich's August 1, 1998 accident until February 10, 1999 is untimely as a matter of law.  *Deso v. London & Lancaster Indem. Co.,* 143 N.E.2d 889, 891 (N.Y. 1957) (without mitigating circumstances, 1 ½ month delay untimely*; see also U.S. Underwriters Ins. Co. v.  A&D Maja Const., Inc.,* 160 F.Supp.2d 565, 569 (S.D.N.Y. 2001) ("an unexcused delay of one to two months in notifying the insurer is unreasonable as a matter of law") (citing

23

*American Ins. Co. v. Fairchild Indus., Inc.,* 56 F.3d 435, 440 (2d Cir. 1995).

**C.    Summons and Complaint in Underlying Action**

Plaintiff contends forwarding Defendant the Summons and Complaint in *Lukich v. Chapel Park* as soon as Plaintiff received it also demonstrates compliance with applicable notice requirements.  Plaintiff's Memorandum at 15.

Under New York law, "an insured's duty to notify an insurer of an occurrence is not solely triggered upon receipt of a formal PRP [potentially responsible party], or a summons and complaint, but accrues upon knowledge of facts sufficient to alert the insured to a reasonable possibility of the existence of a potentially covered claim." *TIG Ins. Co. v. Town of Cheektowaga*, 142 F.Supp.2d 343, 368 (W.D.N.Y. 2000).  *See also Ogden Corp. v. Travelers Indemnity Co.*, 924 F.2d 39, 43 (2d Cir. 1991) (the insured's duty to notify does not accrue only upon receipt of a formal letter advising that the insured is a potentially responsible party ("a PRP letter") or a summons and complaint). Instead, the obligation to provide notice of an occurrence accrues when the facts known to the insured would have suggested to a reasonable person the possibility of a potentially covered claim.  *Commercial Union*, *supra*, at 272; *Utica Mut. Ins. Co. v. Firemen's Fund Ins. Co.*, 748 F.2d 118, 122 (2d Cir. 1984).  Nevertheless, compliance with notice requirements is a condition precedent to an insurer's liability under the policy, *Commercial Union*, *supra*, at 271, and failure to comply with the notice requirement relieves an insurer of its duty to defend and indemnify, even where there has been no showing by the insurer of prejudice to itself.  *Unigard Security Ins. Co., Inc. v. North River Ins. Co.*, 594 N.E.2d 571, 573 (N.Y. 1992); *Security Mutual Ins. Co.*, *supra*, at 78.

Clearly, the only credible evidence in this record establishes the facts known to Plaintiff concerning the accident within a week of the accident's occurrence would have suggested to a reasonable person the possibility of a potentially covered claim. *Commercial Union*, *supra*, at 272; *Utica Mutual Ins. Co.*, *supra*, at 122.  As such, Plaintiff's argument that it forwarded the Summons and Complaint in *Lukich v. Chapel Park* to Defendant immediately upon receiving the same is irrelevant.


**CONCLUSION**

Based on the foregoing, Defendant's motion for partial summary judgment (Docket Item No. 14) is GRANTED.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


Dated: September 29, 2006
       Buffalo, New York